UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DEBRA C.,

                              Plaintiff,

          v.

LELAND DUDEK, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

Case No. 3:24-cv-05518-TLF

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

…

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for supplemental security income ("SSI") and disability insurance benefits ("DIB") under 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to the jurisdiction of a Magistrate Judge. Dkt. 2. Plaintiff challenges the Administrative Law Judge's ("ALJ") decision finding that plaintiff was not disabled. Dkt. 4, Complaint.

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The Court must consider the administrative

1

record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

On January 7, 2016, Plaintiff applied for Social Security Disability Insurance Benefits ("SSDI") and Supplemental Security Income disability benefits ("SSI"), alleging a disability onset date of April 1, 2013 and a date last insured of June 30, 2017. AR 435-53, AR 454. The claim was denied initially and upon reconsideration, and plaintiff requested a hearing. AR 298-301, AR 307-21.

On May 2, 2018, ALJ Malcolm Ross found claimant not disabled. AR 15-50. Plaintiff requested administrative review, which the Appeals Council ("AC") declined. AR 420-23, AR 1-7. Plaintiff sought judicial review, and United States Magistrate Judge Richard Creatura ordered a remand for further proceedings. AR 1761-74. After a hearing on remand, on May 25, 2021, ALJ Ross again found Plaintiff not disabled. AR. 1553-95. The parties filed a stipulated motion for remand, and on December 22, 2021, Judge Creatura reversed and remanded for further administrative proceedings. AR 3442-46.

On June 13, 2022, the AC issued an order remanding the case to a different ALJ. AR 3455-61. ALJ Allen G. Erickson held two hearings with plaintiff, her attorney, and a VE in attendance and, on March 13, 2024, found plaintiff not disabled before November 19, 2021, but disabled on that date and continued to be disabled through March 13, 2024. AR 3321-98, AR 3259-320. After exhausting her administrative remedies, plaintiff now seeks review of this March 2024 decision. Dkt. 1.

ALJ Erickson found Plaintiff to have the following severe impairments: lumbar spine degenerative disc disease, degenerative joint disease, and spondylolisthesis, and major depressive disorder (MDD). AR 3266. The ALJ found the "claimant's substance use is not a

contributing factor material to the determination of disability." AR 3268. The ALJ determined

Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20

C.F.R. 404.1567(b) and 416.967(b) except occasional climbing of ladders, ropes, and scaffolds;

occasional crawling; occasional exposure to vibration; occasional exposure to extreme cold

temperatures; an ability to understand, remember, and apply, detailed, not complex,

instructions; perform predictable tasks; not in a fast passed, production type environment;

exposure to occasional workplace changes; and occasional interaction with the public. AR 3273.

Prior to the established disability onset date of November 19, 2021, the ALJ determined plaintiff

could have performed the following work: Routing Clerk (DOT 222687022; light; SVP-2; 105,000

positions); Collator Operator (DOT 208.685-010; light; SVP-2, 33,000 positions); Parking Lot

Attendant (DOT 915.473-010, light, SVP-2; 25,000 positions). AR 3298.

**DISCUSSION**

1.  **Whether the ALJ harmfully erred by not conducting a two-step DAA analysis, as
    required under *Bustamante* and SSR 13-2P**

Plaintiff argues the ALJ used the effects of Drug Addiction or Alcoholism ("DAA") to discount

opinions and testimony before properly separating out the effects of DAA, as required under

*Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001) and SSR 13-2p. Dkt. 14, at 5-8;

SSR 13-2P, 78 Fed. Reg. 11939 (Feb. 20, 2013). Defendant argues the ALJ was not required to

determine DAA materiality because the ALJ did not find plaintiff disabled after considering her

substance use. Dkt. 20, at 11.

If substance use disorder is a material contributing factor, the Contract with America

Advancement Act, Pub. L. No. 104-121, Sec. 105, 110 Stat. 847 (March 1996) applies, and

states that "an individual shall not be considered to be disabled for purposes of [benefits under

Title II or XVI of the Social Security Act] if alcoholism or drug addiction would (but for this

subparagraph) be a contributing factor material to the Commissioner's determination that the

3

individual is disabled."). 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); *Sousa v. Callahan,* 143 F.3d 1240, 1245 (9th Cir. 1998) (reversing and noting the district court "failed to distinguish between substance abuse contributing to the disability and *the disability remaining after the claimant stopped using drugs or alcohol."* (emphasis in original)).

Under Ninth Circuit precedent, in analyzing substance abuse in a disability determination the ALJ must first determine whether the claimant is disabled under the standard five-step process, including DAA. If the ALJ makes a disability finding at step one, the ALJ must conduct the five-step sequence a second time to separate out the effects of DAA and determine whether the plaintiff would be found disabled if they ceased using drugs or alcohol. *Bustamante*, 262 F.3d at 955. Moreover, SSR 13-2p requires an ALJ to determine the nature of plaintiff's DAA, whether it is medically determinable, and how it interacts with each of plaintiff's impairments after a disability has been established.[1]

Here, the ALJ found that the "claimants substance use is not a contributing factor material to the determination of disability." AR 3268. Yet the ALJ made findings to discount the medical opinions on record on the basis that plaintiff's symptoms and impairments were intertwined with or caused by substance using, including alcohol, cannabis, and opiates. For example:

- The ALJ gave little weight to treating pain doctor Dr. Pexton's June 2017 and May 2017 opinions, suggesting that "if the doctor had access to the records available at the hearing level, he perhaps would have noted that the claimant's allegations, presentation, and pain complaints increased significantly when she began seeing

---

[1] "We follow our usual case development rules and procedures for any impairment in cases in which DAA materiality is, or may be, an issue....We use the same rules for determining whether a claimant has a Substance Use Disorder as we use for any other medically determinable physical or mental impairment....We do not have special rules for evaluating a claimant's credibility in cases involving DAA. Adjudicators must not presume that all claimants with DAA are inherently less credible than other claimants." SSR 13-2P, 78 Fed. Reg. 11939 (Feb. 20, 2013).

him, and would perhaps have reconsidered prescribing a high dose of narcotics and would have offered different opinions." AR 3290. He also stated "…she presented with greater impairment to him (e.g. abnormal gait (Exs. 10F/1, 4, 7, 11; 20F/98-101)) than she did elsewhere until she received a higher dose of narcotics." AR 3290.

- The ALJ partially discounted Dr. Kimberly Wheeler's 2019 opinion, stating "Dr. Wheeler also offers no substance use disorder diagnosis, even of a condition in remission, apparently accepting the claimant's self-report that 'I do not like feeling high' (Ex. 45F/2). The undersigned compares this self-report with her disclosures to Catholic Community Services in Exhibit 54F, of occasional alcohol use and up to daily smoking of marijuana in the previous year." AR 3294.

- In assigning ""some weight" to Dr. Wheeler's December 2020 examination, the ALJ found: "[r]egarding alcohol, the claimant told Dr. Wheeler, 'I haven't touched any in I do not know how long now' (Ex. 76F/2). Inconsistently, in her September 2019 CCS assessment, the claimant stated that 'I do not take my meds if I want a beer' (Ex. 77F/4) and elsewhere she described her drinking as 'occasional' (e.g. Ex. 44F/4)." AR 3295.

- As to plaintiff's failure to comply with treatment, the ALJ found "[t]reatment otherwise for her physical symptoms has been conservative with medication, including narcotics, and physical therapy. She also has a history of therapeutic injections, which she found helpful. As discussed above, the claimant also has been able to not take her medications if she wants to drink alcohol and use weed gummies." AR 3286.

The ALJ relied on such reasoning to diminish the weight of various medical opinions and to cast doubt on the credibility of plaintiff's symptom testimony — before the ALJ conducted step

one of the *Bustamante* analysis. *See Brown v. Astrue,* No. CIV S-09-3125 GGH*, 2010 WL 4876591* (E.D. Cal. November 22, 2010) (reversing the ALJ's decision sua sponte, finding harmful error in the ALJ's lack of Bustamante two-part review, and explaining the first part, and second part, of the Bustamante analysis).

Yet this is the type of reasoning *Bustamante* prohibits: discounting medical opinions or subjective reports because of DAA before making a threshold determination whether the claimant is disabled, including all impairments. The ALJ did not use the DAA solely as a reason to find plaintiff's statements unreliable, but the ALJ also made findings based on DAA to discount the medical providers' opinions and noted harmful effects of DAA.

Failure to follow the appropriate two-step framework is legal error under *Bustamante*. *See Norman Kijakazi*, 650 F. Supp. 3d 1096, 1102 (D. Or. 2022) ("The ALJ erred when he failed to conduct the separate DAA analysis and yet, nevertheless, concluded Plaintiff was more functional and, therefore, not disabled when abstinent from substance abuse.").

Here the ALJ's RFC analysis commingled plaintiff's substance use alongside mental and physical health issues without the required initial finding of disability.

Without a clear disability finding followed by a materiality analysis, the Court cannot determine whether the denial was legally proper, thus the ALJ's legal error was not harmless. The DAA reasoning had a material effect on the disability determination. Remand is warranted for a proper *Bustamante*-compliant DAA analysis.

**2. Whether the ALJ articulated legally sufficient reasons to reject Plaintiff's statements concerning symptoms and limitations for the period at issue: between the alleged disability onset date of April 1, 2013 and November 19, 2021.**

The ALJ found that plaintiff's statements concerning the intensity, persistence, and limited effects of her symptoms were not entirely credible. AR 3275.

The ALJ's determinations about a claimant's statements about limitations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)). In assessing a plaintiff's credibility, the ALJ must determine whether plaintiff has presented objective medical evidence of an underlying impairment. If such evidence is present and there is no evidence of malingering, the ALJ can only reject plaintiff's testimony on the severity of their symptoms for specific, clear, and convincing reasons. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014) (*citing Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)).

But an ALJ may not reject a claimant's subjective symptom testimony "solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir. 1991); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying rule to subjective complaints other than pain). Treatment records cannot be cherry-picked; the ALJ must consider a particular record of treatment in light of the overall diagnostic record. *Ghanim,* 763 F.3d at 1164. An ALJ may discount a claimant's testimony based on daily activities that either contradict their testimony or that meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Plaintiff has consistently reported severe and unrelenting back pain that radiates down to her right leg and complained to providers from her initial injury in 2012 to her last visit with Dr. Miller on December 07, 2023. *See*, *e.g.*, AR 625, AR 890, AR 897, AR 988, AR 1024, AR 2821, AR 2838, AR 2895, AR 2901, AR 2903, AR 2904, AR 3121, AR 3252, AR 3888, 3934, AR 4028, AR 4031, AR 4034, AR 4074, AR 4200, AR 4574. This pain has been consistently worsened by standing, sitting, and walking for more than short periods. AR 1063, AR 1088-90, AR 2836, AR

2899, AR 2904, AR 3756, AR 3788, AR 3797, AR 3805, AR 4436. She described stabbing lumbar and sacroiliac pain, numbness, tingling, and weakness in her lower extremities, along with repeated falls caused by sudden numbness in her legs, leading to a broken ankle and two broken legs. *See*, *e.g.*, AR 816, AR 897, AR 988, AR 1034, AR 1045, AR 1082, AR 2185, AR 2882, AR 2895, AR 2901, AR 3121, AR 3825, AR 3826, AR 2832-38, AR 3888, AR 3980, AR 4028, AR 4087, AR 4525.

Providers corroborated her reports, noting observed difficult flexing forward, tenderness in the lumbar area, and reliance on medication and frequent positions adjustments during appointments. AR 1034, AR 1045, AR 1082, AR 2836, AR 2899. For example, on February 10, 2015, Dr. Losee, an examining psychologist whose opinion the ALJ gave "some weight," observed:

> She exhibited frequent pain behaviors such as standing once, saying that she was having a muscle spasm, leaning to the side with her right leg stretched out, shifting while seated, and taking pain medication toward the end.

AR 1089-90. Dr. Loreli Thompson, Ph.D., examined plaintiff on April 13, 2016 and noted plaintiff requested to sit on the couch instead of a chair due to her back pain, and eventually stretched out lengthwise. AR 1180. Diagnostic testing corroborated plaintiff's pain complaints: a February 2017 lumbar MRI showed disc bulging with bilateral neural foraminal encroachment at L4-5, as well as L5-S1 facet arthropathy and right paracentral disc protrusion mildly displacing the S1 nerve root. AR 2088.

Defendant argues that the ALJ reasonably discounted this testimony by citing medical findings of normal gait, intact sensation, full strength, and negative straight-leg raises. Dkt. 20, at 3 (citing to AR 642, 664, 768, 905, 908, 956, 990, 1047, 1051, 1053, 1056-57, 1064, 1084, 2157, 3277-78). Defendant also notes that imaging was characterized as showing only "mild to moderate" degenerative changes. *Id*; AR 2088. In 2013, plaintiff had an MRI and consulting

neurosurgeon Ryan Halpin, M.D remarked that plaintiff's MRI "did not look too bad," and neurologist April McVey, M.D., observed discrepancies between complaints and exam results. AR 637, AR 797-98, AR 1527, AR 3276-79.

Symptom testimony cannot be rejected solely because it is not affirmatively confirmed by medical evidence. *Bunnell*, 947 F.2d at 345. Further, selective reliance on normal findings while discarding abnormal ones does not meet the clear and convincing standard. *Ghanim,* 763 F.3d at 1164.

Here, the ALJ emphasized benign exams while downplaying evidence of paraspinal spasms, sacroiliac tenderness, and documented falls associated with radiculopathy. Additionally, the consistent prescription of opiates, injections, and other invasive treatment modalities by her medical providers corroborates plaintiff's pain rather than undermines it. *Scrogham v. Colvin*, 765 F.3d 685, 700 (7th Cir. 2014).

Along with her physical symptoms, plaintiff reported significant psychological symptoms including anxiety and depression, as observed by Mr. Williams through her "flat affect" and general demeanor. AR 4425, AR 4426, AR 4428, AR 4431, AR 4432, AR 4438, AR 4464, AR 4466, AR 4468, AR 4484, AR 4490. She repeatedly stated that these psychological symptoms were compounded her physical limitations. AR 4431, AR 4434, AR 4440, AR 4443, AR 4480, AR 4484, AR 4529. Although she has reprieves from her pain, she still reports a baseline. AR 4521, AR 4523. She cannot engage in activities of daily living without extreme pain and days of recovery time and simple tasks, such as showering or walking her dog, demand long periods of rest time. AR 4436, AR 4438-39, AR 4436, AR 4445, AR 4454, AR 4470, AR 4480, AR 4483, AR 4490-91, AR 4497, AR 4505, AR 4515, AR 4533, AR 4535, AR 4537.

Defendant argues "plaintiff's psychological complaints were inconsistent with the longitudinal objective evidence" but reports of improvement in the context of mental health

issues must be interpreted with an understanding of the patient's overall well-being and the

nature of her symptoms. Dkt. 20, at 4; *Garrison*, 495 F.3d at 1017-1018.

For example, the ALJ states:

> Further, she has reported an array of activities like going to concerts to
> photograph or videotape, playing video games and games on her phone, going
> out of town, driving, and going on a boat (Exs. 70F/1; 75F/3; 77F/28, 34, 100-
> 101; 104F/11, 49, 125, 137; Hearing Testimony).

AR 3273.

> In terms of activities of daily living, the claimant reports that her symptoms and
> resulting limitations make it difficult to prepare meals, take care of personal
> needs, sleep, complete sleep, complete household chores, shop, and drive (Exs.
> 5E, 9E, 25E; Hearing Testimony). The claimant testified to good days and bad
> days and reported that her sleep varied, depending on her pain level. On bad
> days, she did not do anything for 3 to 4 days, including showering. She reported
> that she tended to have 1 to 2 good days per week. By the January 2021
> hearing, the claimant testified that she last drove a month before, but no longer
> drove due to problems with her neurostimulator. She testified that it was going to
> be removed in February. The last time she did something social, she testified,
> was 2 summers ago, before the pandemic, she went to a concert to videotape
> with her tablet. She sat at 3-4 hour shows, but then she is "down for the week."
> At the November 2023 hearing, she alleged that she is mostly in bed, and will get
> up to go to the bathroom, or sit in her backyard, but cannot sweep, mop, vacuum,
> drive, or make it up the stairs.

AR 3275.

The ALJ may not discount testimony solely because it is inconsistent with daily activities

unless those activities contradict the claimant's testimony or demonstrate transferable work

skills. *Orn*, 495 F.3d at 639. Particular caution is warranted when assessing whether the daily

activities can contradict a plaintiff's claims of disability. *See e.g.*, *Colvin*, 759 F.3d at 1016 (9th

Cir. 2014); *Smolen v. Chater*, 80 F.3d 1273, 1284 n. 7. (9th Cir. 1996)( "The Social Security Act

does not require that claimants be utterly incapacitated to be eligible for benefits, and many

home activities may not be easily transferable to a work environment where it might be

impossible to rest periodically or take medication.")(internal citation omitted); *Vertigan v. Halter*,

260 F.3d 1044, 1050 (9th Cir. 2001)("[A]ctivities such as walking in the mall and swimming are

not necessarily transferable to the work setting with regard to the impact of pain. A patient may do these activities despite pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved."). Plaintiff's ability to perform basic activities intermittently, and often with reported difficulty, does not undermine her testimony about persistent depression and concentration problems, as well as her credited allegations of severe pain.

As for malingering, the ALJ concluded "given the overall lack of objective evidence to support the level of pain she alleges, her inconsistent presentations that has favored exhibiting greater impairment to her pain doctors, along with other inconsistencies discussed further below, the undersigned finds the evidence by a preponderance establishes that the claimant has malingered for secondary gain." AR 3287. But the record contains no treating or examining provider opinion diagnosing malingering or attributing plaintiff's impairments to substance abuse. The ALJ, a non-medical adjudicator, lacked the clinical foundation for assessing whether functional limitations were caused by DAA rather than underlying medical impairments. Consequently, it is impossible to determine what portion of plaintiff's pain and limitations the ALJ erroneously attributed to DAA versus documented medical impairments.

Because the ALJ's analysis does not identify evidence of malingering, is not qualified to assess whether limitations should or should not be attributed to DAA and does not distinguish DAA concerns from limitations discounted for other credibility reasons, the Court cannot meaningfully review whether the decision applied the correct legal standard or was supported by substantial evidence. Thus, a remand is warranted.

3. **Whether the ALJ articulated legally sufficient reasons to reject the opinion of Dr. Ken Pexton, M.D., Nurse Monica Hallak, ARNP, Dr. Kimberly Wheeler, Ph.D., and Robert Williams, BA, CAAR**

Plaintiff filed her applications prior to March 27, 2017, therefore under the applicable regulations, an ALJ must provide "clear and convincing" reasons to reject the uncontradicted opinions of an examining doctor, and "specific and legitimate" reasons to reject the contradicted opinions of an examining doctor. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

- **Dr. Ken Pexton, M.D.**

Plaintiff argues the ALJ improperly discounted treating pain specialist Dr. Pexton's opinion without substantial evidence, relying on cherry-picked inconsistencies while failing to appreciate the longitudinal nature of his treating relationship and the objective and subjective evidence supporting his findings. Dkt. 15, at 8-16. Defendant argues that the ALJ gave valid reasons not to credit Dr. Pexton's medical opinion based on inconsistencies with her presentation to other sources, insufficient explanation, and objective evidence for his opinions, and because opinions from state agencies consultants were more persuasive and consistent with the longitudinal record. Dkt. 20, 13-16

Dr. Pexton, a medical doctor specializing in pain management, and his colleagues at the Peninsula Pain Clinic, treated plaintiff for several years, and Dr. Pexton tracked the findings and progress notes at the pain clinic, as well as the progress notes, records, and referrals. *See* AR 1024-77, AR 1078-87, AR 1093-94, AR 1186-1308, AR 1350-1479, AR 1491-1503, AR 2081-82, AR 2158-97, AR 2536-87, AR 2625-49, AR 2720-51, AR 2899-42, AR 2943-46. Dr. Pexton authored two Medical Source Statements dated May 11, 2017 and June 20, 2017. AR 1480, AR 2083-85. In the June statement, he diagnosed "chronic pain stemming from chronic low back pain with radicular symptoms, primarily on the right." AR 1480. Based on years of clinical evaluations, treatment history, and plaintiff's consistent reports of pain, Dr. Pexton determined that, although he is "rarely in favor of disability for the patient[s he sees]…," plaintiff had "tried hard for years," complied with treatment, and failed to achieve adequate relief, making her an exception. AR 1480.

In May 2017, Dr. Pexton opined plaintiff could sit for only 30 minutes at a time, stand for 5 minutes at a time, and would have to take breaks by walking, and go off task 30% of the time. AR 2083-85. These limitations mirrored plaintiff's reported daily functioning, including her testimony that she spends most of her time in bed on bad days, cannot sweep, mop, vacuum, or drive, and can only tolerate social activities at the cost of days of recovery. AR 3363.

Plaintiff's treatment record with Dr. Pexton included extensive non-surgical interventions, such as chiropractic treatment, massage therapy, TENS unit use, physical therapy, heat therapy, facet injections, trigger point injections, epidural steroid injections, radiofrequency ablation, and sacroiliac joint injections, as well as two separate spinal cord stimulator implants. AR 1024, 1480. Although these measures sometimes "helped with the pain," they could not provide meaningful, sustained relief. *Id*. Plaintiff was also unable to take NSAIDs because of a confirmed allergic reaction, which her primary care physician noted "eliminates a vast portion of therapy." AR 894, AR 1419, AR 3138.

The ALJ gave Dr. Pexton's opinion "little weight," stating that it was unsupported by objective evidence, inconsistent with the record as a whole, and based on a "fill-in-the-blank" form without explanation. AR 3290.

The ALJ stated that if Dr. Pexton had reviewed the full record, he would have reconsidered prescribing high doses of narcotics and issued different opinions. AR 3290. Such speculation constitutes an improper substitution of lay judgment for that of a medical professional. *See Scrogham v. Colvin*, 765 F.3d 685, 701 (7th Cir. 2014) (ALJ improperly substituted own opinion for medical judgment).

While the ALJ emphasized normal or mild findings on certain exams — such as normal gait, intact motor strength, and negative straight leg raises — he did not adequately consider

evidence showing an objective basis for plaintiff's radicular pain. AR 2920, AR 2932, AR 2950. For example, a February 2017 lumbar myelogram revealed:

1. At L4–5: small to moderate concentric broad-based disc bulging with bilateral far lateral extension, causing mild bilateral neural foraminal encroachment, and bilateral moderate-to-severe facet arthropathy (right greater than left);

2. At L5–S1: right paracentral focal disc protrusion causing mild mass effect on the right lateral recess and mildly displacing the right S1 nerve root.

AR 2088. Plaintiff asserts "a mild displacement of a nerve root does not necessarily correspond to mild pain" and must be assessed by a pain specialist like Dr. Pexton. Dkt. 15, at 10. Dr. Pexton's opinion was corroborated by ARNP Hallak, a colleague in the same clinic, who described similar limitations and pain-related symptoms. AR 2943-46.

The ALJ also failed to reconcile Dr. Pexton's opinions with plaintiff's consistent reports of both physical and psychological symptoms. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir.2001) ("But an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations.").

Furthermore, the opinions of the state agency consultants Dennis Koukol, M.D., Norman Staley, M.D., J.D. Fitterer, M.D., and Howard Platter, M.D. should not have been given more weight than Dr. Pexton, who was the primary treating physician of record, coupled with treating ARNP Halak and the treatment records established by the Peninsula Pain Clinic. 20 C.F.R. § 404.1527; *Ryan v. Comm'r of SSA*, 528 F.3d 1194, 1098 (9th Cir. 2008) (""If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence")

(internal citations omitted); AR 3287-88, AR 3290. The reviewers' opinions relied on the same imaging as Dr. Pexton, and the conclusions of a non-examining physician are not substantial evidence where the non-examining physician uses the same findings as a treating physician but comes to different conclusions. *Orn*, 495 F.3d at 632.

Defendant asserts Plaintiff misinformed her treating pain physician, Dr. Pexton, by reporting to Dr. Pexton that consulting neurosurgeon Alex Mohit, M.D. had offered surgery, which plaintiff said she did not want to undergo. Dkt. 20, at 6 (citing AR 1206, AR 3278). Defendant argues this alleged misrepresentation coincided with plaintiff's request for increased opiate dosage, suggesting an exaggeration of symptoms to obtain narcotic medications. Dkt. 20, at 6-7.

The record shows this alleged miscommunication stems from a discrepancy between plaintiff's report to Dr. Pexton and Dr. Mohit's actual clinical notes. When plaintiff saw Dr. Mohit in November 2014, he explicitly concluded that "she would not benefit from surgical intervention," and recommended "she continue with conservative measures and symptomatic management." AR 1085. Yet, in a February 2016 visit with Dr. Pexton, plaintiff stated that Dr. Mohit had offered surgery with a "50/50" chance of improvement and "did not feel these odds were good enough to go through with that surgery." AR 1206. In a November 2014 visit, Dr. Pexton had also explicitly stated, "she did see Dr. Mohit of neurosurgery…[h]e did not think surgery was warranted at this time." AR 1024

Given that surgical outcomes were discussed in general terms, the ALJ's finding is not supported by substantial evidence. *See* AR 1084-85 (Dr. Mohit: "I had a long discussion with her in regards to the natural history of this condition and treatment options."). Plaintiff argues that, in any event, this misreporting did not seem intentional or deceptive, just a misunderstanding perhaps, and Dr. Pexton did not rely on it. Dkt. 15, at 7-8. Dr. Pexton's

February 2016 note reflects his treatment decisions focused primarily on plaintiff's reporting pain levels and functioning, and not on Dr. Mohit's surgical assessment. AR 1206.

Therefore, although the ALJ characterized this inconsistency as undermining plaintiff's credibility, the Court finds that there is not substantial evidence in the record that plaintiff intentionally misled her providers to obtain opioids. Accordingly, the alleged misreporting does not support the ALJ's discounting of either Dr. Pexton's evaluation, or of plaintiff's overall credibility. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (The ALJ must provide specific, cogent reasons supported by substantial evidence for discounting claimant testimony).

In sum, the longitudinal treating relationship, consistent objective findings supporting radicular pain, extensive failed treatments, corroborating provider opinions, and consistent reports of physical and psychological limitations all support Dr. Pexton's functional assessments. The ALJ's reliance on selective evidence and speculation about alternative treatment choices does not constitute substantial evidence. The ALJ erred by failing to provide specific, legitimate reasons to discount the opinion of Plaintiff's long-term treating physician. The record supports giving greater weight to Dr. Pexton's opinion in evaluating Plaintiff's functional limitations.

- **Nurse Monica Hallak, ARNP**

Plaintiff argues the ALJ failed to properly evaluate the opinion of Monica Hallak, ARNP, a treating nurse practitioner at the same pain management clinic where Dr. Pexton practiced. Dkt. 15, at 12-13. Defendant argues the ALJ reasonably gave ARNP Hallak's testimony less weight due to the lack of objective support and reliance on plaintiff's allegedly discredited self-report. Dkt. 20, at 16.

ARNP Hallak completed a medical source statement on December 7, 2020, and opined plaintiff had experienced debilitating chronic pain since 2013 that would significantly interfere

16

with her ability to perform full-time work. AR 2943-46. She stated plaintiff's conditions would cause her to be off task more than 30% of a typical workday, that she would need to lie down or recline for pain relief, and that she would miss more than four days of work per month. AR 2945-46. She also stated plaintiff's symptoms were not expected to improve and that she had complied with prescribed treatment, which included Hydrocodone, Oxycodone, Tramadol, Methocarbamol, and Tizanidine. AR 2945.

The ALJ gave "low weight" to ARNP Hallak's opinion, asserting that her assessment was inconsistent with the objective evidence, overly reliant on plaintiff's subjective complaints, and the check-form did not provide enough information. AR 3290-91.

Because plaintiff filed her disability applications before March 27, 2017, nurse practitioners like ARNP Hallak were considered "other medical sources," not "acceptable medical sources." SSR 06-03p. Still, the ALJ was required to provide germane reasons to discount such an opinion. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). In doing so, the ALJ was also required to consider the factors laid out in SSR 06-03p, including the source's relationship with the claimant, consistency with other evidence, and supportability of the opinion.

ARNP Hallak had a longstanding treatment relationship with plaintiff, documented in pain management records that span several years. *See, e.g.*, AR 1024-1077, AR 1350-1479, AR 1491-1503, AR 2081-82, AR 2158-97. She treated plaintiff for complex chronic pain and regularly reviewed objective imaging results and physical examinations. Her opinion was based on direct clinical observation, longitudinal assessment, and plaintiff's extensive treatment history — including unsuccessful trials of physical therapy, chiropractic treatment, TENS units, spinal injections, and two implanted spinal cord stimulators. AR 1024, 1480. The Ninth Circuit has also held that check-box opinions from treating providers may not be rejected as conclusory if the opinions are supported by treatment notes. *Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 (9th Cir. 2014).

Contrary to the ALJ's assertion, ARNP Hallak's opinions did not solely depend on plaintiff's subjective complaints. The clinical notes reference pain behavior, physical limitations, and ongoing medication management consistent with the chronic nature of plaintiff's impairments. The consistency of her opinion with that of Dr. Pexton, who is an acceptable medical source at the same clinic, further supports its reliability.

The ALJ erred by discounting Hallak's opinion without considering its alignment with the longitudinal treatment evidence. *Popa v. Berryhill*, 872 F.3d 901, 907-08 (9th Cir. 2017) (holding that ALJ erred by rejecting nurse practitioner's opinion without germane reasons where the opinion was consistent with the record and treating relationship). The treatment records all come from Peninsula Pain Clinic, from ARNP Hallak, Dr. Pexton, and their referrals.

In sum, the ALJ failed to provide germane reasons supported by substantial evidence for rejecting ARNP Hallak's medical opinion. Her longitudinal treatment of plaintiff, consistency with Dr. Pexton's opinion, and reliance on objective and clinical findings warrant greater consideration. The ALJ's error in this regard was not harmless, as proper crediting of ARNP Hallak's opinion would potentially result in greater functional limitations than were reflected in the RFC.

- **Dr. Kimberly Wheeler, Ph.D.**

As a procedural matter, defendant urges the Court to not address plaintiff's arguments surrounding the ALJ's rejection of Dr. Wheeler's medical opinions because plaintiff "did not include this issue in her list of alleged errors on the first page of her opening brief….contrary to this Court's Scheduling Order that it 'will not consider or rule on assignments of error that are not listed in this section of the opening brief.'" Dkt. 20, at 18. Yet, the Ninth Circuit has not declined to review issues raised by a party in similar circumstances, "so long as the issue is

developed in the body of the brief," as it is in this case. *Ballinger v. City of Oakland*, 24 F.4th 1287, 1292, n. 1. (9th Cir. 2022).

The ALJ gave Dr. Wheeler's opinions "some weight" but discounted her findings as inconsistent with later treatment records and as being based on subjective complaints. AR 3294-96. Plaintiff argues the ALJ did not give sufficient reasons to reject Dr. Wheeler's opinions, and again references the ALJ's use of DAA and Dr. Wheeler's opinion. Dkt. 15, at 19-20.

Defendant argues that Dr. Wheeler's opinions "were 1) inconsistent with plaintiff's activities like playing video games and attending concerts, 2) were inconsistent with the routinely normal psychological findings in treatment settings, 3) were undermined by plaintiff's unreliable assertions to Dr. Wheeler that her substance use was in longstanding remission, and 4) were not as persuasive as other psychological opinions that that were consistent with the longitudinal evidence." Dkt 20, at 19.

On May 15, 2019, Dr. Wheeler performed a psychological consultative exam and found plaintiff's attitude and behavior were "gamy and histrionic," her mood was "angry, sad, and scared," her affect was "labile in a Borderline pattern," her concentration was "abraded with pain." AR 2287-88. Dr. Wheeler observed plaintiff's focus on pain, depression, and anxiety, as well as Borderline tendencies such as "[s]ing-song quality of voice, mocking, quick to express resentment with sugar coated veneer of smiles. Comes across as insincere, would impair worker and customer relationships." AR 2284. Dr. Wheeler found plaintiff could not complete a workday or perform within a schedule, and these limitations would persist beyond 12 months. AR 2286.

On December 29, 2020, Dr. Wheeler performed her second mental status examination. AR 3137-41. Again, Dr. Wheeler noted plaintiff's affect was labile in a Borderline pattern and her concentration was impaired by pain, and she continued to show Borderline Personality and

Somatic Symptom Disorder. AR 3134. She found plaintiff markedly limited overall and not able to complete a normal workday, perform within a schedule, and adapt to routine work settings. AR 3139. She found these impairments would continue 12 months or more. AR 3140.

Under the pre-2017 rules, Dr. Wheeler's opinions are those of an examining psychologist, a source entitled to more weight than non-examining consultants. *Lester*, 81 F.3d at 830-31. The ALJ's primary rationales, which include an alleged lack of record review, reliance on plaintiff's self-reports, and inconsistency with activity and other opinions, must be supported by substantial evidence. AR 3294.

Here, the ALJ relied on inconsistencies in plaintiff's substance use report to discount Dr. Wheeler's opinions. But the ALJ did not identify medical evidence showing how the alleged inconsistency materially undermined her functional assessments. If the ALJ believed substance use could have inflated the limitations, SSR 13-2 required a proper *Bustamante* two-step DAA analysis, which was not performed.

Dr. Wheeler's evaluations were grounded in direct observation and standardized mental status examination findings; these are "objective measures" in the mental health context. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). The fact Dr. Wheeler had limited collateral records does not by itself undermine her clinical observations, particularly where she twice conducted independent examinations a year apart and reached consistent conclusions. AR 2287-88, AR 3137-41. The ALJ's speculations that Dr. Wheeler would not have diagnosed Somatic Symptom Disorder with more records is not a valid specific and legitimate reason, as it is conclusory, speculative, and unsupported by medical evidence. AR 3294.

Playing video games and attending concerts are activities that do not clearly contradict marked limitations in work-related functioning. An ALJ may only discount a claimant's testimony

based on daily activities that either contradict their testimony or that meet the threshold for transferable work skills. *Orn,* 495 F.3d at 639.

Finally, the ALJ's reliance on non-examining consultants over an examining psychologist's detailed findings requires more than a bare conclusion about consistency with the longitudinal record. *Id.* at 632. Dr. Wheeler's findings were supported by treating pain management records from Dr. Pexton and ARNP Hallak, as discussed above, and later counseling evidence from Mr. Williams, and are supported by the reviewing opinion of Dr. Sanchez. AR 4391-4545, AR 2803-07. Thus, the ALJ did not articulate legally sufficient reasons to reject Dr. Wheeler's opinions.

- **Robert Williams, BA, CAAR**

Plaintiff argues the ALJ did not provide legally sufficient reasons to reject the July 21, 2020 opinion of Mr. Williams, who had seen plaintiff regularly since July 25, 2019. Dkt. 15, at 16-17; AR 2754-57. Mr. Williams assessed several preclusive limitations: plaintiff would be off-task 30% of the workday, could not work without special supervision, and difficulty sustaining regular two-hour segments of the workday. AR 2754. He also noted her pain significantly affected her mental functioning, sometimes requiring multiple days of rest after exertions. AR 2757. She would be absent five days a month. *Id.* In explaining her absenteeism, Mr. Williams states: "for each day spent out of the home conducting business, client must spend 2-3 days in bed physically recuperating." *Id.* In additional comments, Mr. Williams states: "client has spent her entire life extremely physically active and productive.  bThis enforced inactivity being largely bed bound has induced depression and despair." *Id.*

The ALJ acknowledged Mr. Williams' treatment relationship but assigned little weight to his opinion, reasoning that: (1) his check-box forms lacked specific information about the impairments supporting the assessed limitations; (2) his statement that Plaintiff was "largely

21

bedbound" was inconsistent with evidence of greater functioning; (3) he lacked access to the full hearing-level record; and (4) as an "other source," his opinion was entitled to less weight than those of acceptable medical sources whose findings were consistent with the overall record. AR 3295.

Plaintiff argues that these findings were based on extensive longitudinal contact, corroborated by Dr. Wheeler's examining psychologist opinions, and were consistent with vocational expert testimony that such limitations would preclude competitive employment. Dkt. 15, at 16-17. Plaintiff further contends that the ALJ mischaracterized the statement that plaintiff was largely bedbound noting that he instead described good days and bad days with activity possible of good days and rest required on bad days. *Id*. Finally, plaintiff asserts the ALJ failed to account for deterioration over time documented after the state agency reviews and Dr. Losee's opinion, which pre-dated Mr. Williams' treatment. *Id*.

The ALJ was required to provide germane reasons to discount Mr. William's opinion. *Dale v. Colvin*, 823 F.3d 941, 943 (9th Cir. 2016). The first rationale, that the opinion was presented on a check-box form without supporting explanation, can be germane if supported by substantial evidence. Even so, here the record shows Mr. Williams had an ongoing treatment relationship, and his forms and treatment notes reflected the clinical context of that relationship. AR 2754-57, AR 3142-58. Check-box opinions from treating providers may not be rejected as conclusory when supported by treatment notes. *Garrison,* 759 F.3d at 1014 n.17. Mr. Williams' progress notes documented plaintiff's mood instability, pain behaviors, and activity fluctuation, which are relevant to the assessed off-task and absence limitations. *See* AR 4391-4545.

The ALJ's second rational regarding plaintiff being "largely bedbound" being inconsistent with the plaintiff's activities mischaracterizes the record. Mr. Williams described both good and bad days, noting that plaintiff could engage in activities on good days but required prolonged

rest on bad days. AR 2757. The records the ALJ identifies are daily activities that could be performed on good days, and not down days.

The ALJ also discounted Mr. Williams' opinion based on his status as an "other source" and his lack of access to the full record. These are not, by themselves, germane reasons to reject the opinion where the provider had a substantial treatment history, and the opinion is consistent with other credited medical evidence. *Popa v. Berryhill*, 872 F.3d at 907-08 (holding that ALJ erred by rejecting nurse practitioner's opinion without germane reasons where the opinion was consistent with the record and treating relationship). Mr. Williams' findings are consistent with Dr. Wheeler's examining opinions and post-date the earlier state agency and Dr. Losee reviews, potentially reflecting deterioration over time, a factor the ALJ did not address.

On this record, the ALJ's reasons for discounting Mr. Williams' opinion are not germane and are not supported by substantial evidence.

**4. Harmless Error**

When analyzing whether an error is harmless, the Court must consider whether the error was consequential to the resulting decision that plaintiff did not meet the criteria for disability benefits. *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1055 (9th Cir. 2006) (an error would be considered harmless only if the Court concludes the error was irrelevant to the nondisability finding).

Here, the ALJ committed harmful legal error and improperly used the effects of DAA to reject opinion evidence and testimony without conducting a full review of all impairments, including DAA. The ALJ also committed harmful error improperly rejecting plaintiff's subjective symptom testimony without clear and convincing reasons, as well not articulating legally sufficient reasons to discount the opinions of treating and examining sources, including Dr. Pexton, ARNP Hallak,

Dr. Wheeler, and Mr. Williams. These errors were consequential to the resulting decision finding plaintiff not disabled.

CONCLUSION

For these reasons, the Court concludes the ALJ committed harmful error and the Commissioner's decision is reversed and remanded for additional administrative proceedings. On remand, the Commissioner is directed to: conduct a proper two-step *Bustamante*/SSR 13-2p analysis by determining whether plaintiff is disabled considering all impairments, including substance use, and if disability is established, conduct the materiality analysis required under *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001) and SSR 13-2p.

In conducting the two-step analysis, the Commissioner shall re-assess plaintiff's subjective symptom testimony, considering the longitudinal records of pain behaviors, the 2017 MRI findings, consistent opioid, and injection treatments, and psychological symptoms; re-evaluate the medical opinions of Dr. Pexton, ARNP Hallak, Dr. Wheeler, and Mr. Williams in accordance with applicable treating and examining source standards, giving appropriate weight to longitudinal records and objective findings; allow plaintiff to provide additional evidence; and, obtain additional vocational expert testimony as needed.

Dated this 4th day of September, 2025.

Theresa L. Fricke
United States Magistrate Judge

24